FRIEDMAN, Senior Circuit Judge,
dissenting.
I would affirm.
I
A. In most instances an alleged in-fringer seeks a declaratory judgment of non-infringement or patent invalidity to protect itself from a subsequent judicial determination that has a significant adverse financial impact upon the infringer. The present case involves no such danger or possibility, since the covenant not to sue precludes Forest (the proprietary manufacturer) from subjecting Caraco (the generic manufacturer) to damages for infringement of the '941 patent.
Here Caraco’s reason for seeking a declaratory judgment of non-infringement is quite different. Its concern is not that it may be sued for infringement if it markets its generic version of the patented drug, but that unless it can obtain a present judicial determination of that issue, its ability to enter the market may be delayed. This claim stems from and is based upon the particular provisions of the Hatch-Waxman Act.
*1298 Under that Act someone seeking to market a generic version of a patented drug files an Abbreviated New Drug Application (known as an “ANDA”). The filing of an ANDA constitutes an act of infringement. If, within forty-five days of receiving a notice of such filing that alleges that the patent on the drug is invalid or that the proposed generic drug does not infringe the patent, the proprietary manufacturer sues the generic manufacturer for infringement, the Food and Drug Administration cannot approve the ANDA for thirty months. The Act also provides that the first generic manufacturer to file an ANDA covering the patented drug has the exclusive right to sell such generic product for 180 days following the first sale of the generic product or a court decision holding the patent invalid or not infringed. This provision, under which the 180-day period of exclusivity is triggered by a judicial decision holding the patent invalid or not infringed, is the basis for Caraco’s contention that there was an actual case or controversy before the district court despite Forest’s covenant not to sue for infringement.
The theory, as I understand it and as the court apparently views it, is that the other generic manufacturers who filed first might not begin to sell their generic product upon either the expiration of the thirty month stay period or of the patents, and because the generic manufacturers cannot begin selling their products until 180 days after the first-filing generic manufacturer begins its sales, the result of such earlier filing by the generic manufacturer may be to delay Caraco’s ability to begin marketing its product for a substantial period, or even indefinitely. Caraco thus contends, and the court holds, that it should be able to invoke the alternative statutory triggering mechanism for the 180-day exclusivity period — a judicial determination of patent non-infringement or invalidity — by maintaining its declaratory-judgment litigation.
This argument is highly speculative and conjectural, and involves uncertain legal issues that have not yet been resolved.
I have no basis for concluding that the first-filing generic manufacturer will, or is likely to, delay bringing its product to market after the '712 patent expires. Indeed, such delay would seem inconsistent with that manufacturer’s being the first to file its ANDA — a situation it presumably sought to give it the competitive advantage of having the exclusive right to sell its generic products for the first 180-days after that product went on the market.
The argument also assumes that the 180-day exclusivity period would not begin to run until the generic manufacturer actually begins marketing its product, and any delay in such marketing will simply defer the beginning of the 180-day period. It could plausibly be argued, however, that despite the seemingly absolute nature of the statutory 180-day exclusivity, a generic manufacturer that unreasonably delays the commencement of marketing after the thirty month period and the patent term have expired, loses its right to exclusivity. Indeed, although the issue has not been raised in this appeal, it could be argued that the thirty month period itself terminates if, after triggering that period by suing the generic manufacturer for infringement after it files its ANDA, the proprietary manufacturer in effect vitiates such action by executing a covenant not to sue for infringement and dismissing its infringement suit.
Finally, Caraco’s argument assumes that it will prevail in its non-infringement claim — an uncertain assumption at best.
In MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 S.Ct. 764, 771, 166 L.Ed.2d 604 (2007), the Supreme Court *1299 recently stated that “the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.’ ” Considering all the circumstances here, I answer that question negatively.
B. The court twice cites the legislative history of the Hatch-Waxman Act. The “history” that it cites, however, consists exclusively of statements during the debate on the legislation made by Senator Kennedy, whom it describes as the “ranking member” of the Senate committee.
Senator Kennedy, however, was not a sponsor of the legislation. There is no indication that his statements reflected the views of the majority of the committee or of the Senate, or the sponsors of the legislation. In my view, Senator Kennedy’s statements do not provide an appropriate or adequate basis for determining the scope and meaning of this legislation. See Garcia v. United States, 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (“In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature’s intent lies in the Committee Reports on the bill, which ‘represent] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.’ We have eschewed reliance on the passing comments of one Member, and casual statements from the floor debates.” (citations omitted)).
If, however, Senator Kennedy’s comments are an appropriate source for determining the meaning of the statute, I would give considerable weight to his statement quoted in footnote 14 of the court’s opinion, that: “We believe that the only circumstance in which a case or controversy might not exist would arise in the rare circumstance in which the patent owner and brand drug company have given the generic applicant a covenant not to sue, or otherwise formally acknowledge that the generic applicant’s drug does not infringe.” I do not agree with the court that this statement “only emphasize[s] Congress’s intent that that jurisdiction of federal courts to resolve CAPCs would extend to the limits of the Constitution.”
C. The court contends that its decision is appropriate and necessary to avoid a defeat of the objectives Congress sought to achieve in the Hatch-Waxman Act that, it concludes, would result from permitting a proprietary manufacturer to use covenants not to sue to preclude generic manufacturers from obtaining declaratory judgments on patent infringement and validity. To the extent that Congress may conclude that particular judicial interpretations of the Act thwart the purposes of the legislation, it is for Congress, not for this court, to make whatever changes in the Act it deems appropriate.
II
Although I disagree with the court’s substantive rulings, I agree with the court’s apparent rejection of Forest’s contention that Caraco’s appeal was frivolous and seeking sanctions of therefor. The appeal presents important questions under the Hatch-Waxman Act that this court has not previously decided. Under no circumstances could the appeal fairly be characterized as frivolous. Indeed, it is difficult to see how an appeal in which the appellant prevails and the appellate court adopts its contentions could be so described.
Perhaps Forest made the frivolity contention under the misguided belief that by doing so it was enhancing its prospects of success on the merits. If that was its *1300 view, it was sadly mistaken. In making the frivolity argument, which occupied five pages of its brief, Forest’s counsel was neither helping his client’s case nor aiding the court in performing its appellate function. In my view, a lawyer who makes such a contention of frivolity — and at the close of his oral argument, Forest’s counsel stated he continued to characterize this appeal as frivolous — engages in sanctiona-ble conduct.